# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | | |
|---|---|---|
| AVENUE 6E INVESTMENTS, LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | 2:09-cv-00297 JWS |
| vs. | ) ) | ORDER AND OPINION |
| CITY OF YUMA, ARIZONA, a municipal corporation, | ) ) ) | [Re: Motion at Docket 45] |
| Defendant. | ) ) ) | |

## I. MOTION PRESENTED

At docket 45, plaintiffs Avenue 6E Investments, LLC and Saguaro Desert Land, Inc. (jointly "the Hall Companies") move for entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b) or, in the alternative, for certification of an appeal under 28 U.S.C. § 1292(b). In addition, the Hall Companies request a stay of all proceedings in this court on their disparate impact claim. At docket 46, defendant City of Yuma ("the City") opposes the motion. The Hall Companies reply at docket 47. Oral argument was not requested, but it would not assist the court.

## II.  BACKGROUND

This action arises from the City of Yuma's denial of a rezoning application for a parcel of land in Yuma, Arizona.  The City of Yuma General Plan (the "General Plan") provides guidelines for the development of housing projects in Yuma.  Under Arizona law, all zoning ordinances must be consistent with the General Plan.[1]  The General Plan states that one of its primary goals is to "promote safe, decent, sanitary and affordable housing for all residents."[2]  The General Plan also "expressly prohibits all racially segregative action."[3]  Policies adopted to support the General Plan state that the "City shall enforce State and Federal Fair Housing laws to ensure equal housing opportunities to all regardless of race, ethnicity, color, national origin, religion, sex, disability or familial status."[4]

The Hall Companies have developed several affordable housing projects in Yuma.  The majority of homes in those housing projects were sold to Hispanics.[5]  In 2006, the Hall Companies purchased 42 acres of undeveloped land in the City of Yuma ("the subject property").  Prior to the Hall Companies' purchase of the subject property, KDC of Yuma, LLC ("KDC") owned the property, as well as another 38 acres to the south.  KDC applied to rezone the 80-acre parcel from agricultural to R-1-8 (minimum lot size 8,000 square feet).  The City Council granted the rezoning application, after

---

[1] A.R.S. § 9-462.01(F).

[2] Doc. 30 at p. 5.

[3] *Id.* at p. 4.

[4] *Id.* at p. 5.

[5] *Id.* at p. 6.

which KDC built the Belleza Subdivision with single-family homes on large lots on the south 38 acres and sold the remaining 42 acres to the Hall Companies.

The north boundary of the subject property is bordered by a recreational vehicle ("RV") village, which has 2,500 square foot lots and is limited to occupancy by persons age 55 and over. The City owns the parcel to the east of the subject property, which it "intends to use for expansion of a wastewater facility and municipal park."[6] In 2005, Perricone Development Group II ("Perricone") acquired the 80-acre parcel adjoining the west boundary of the subject property. Perricone intended to develop the Terra Bella Subdivision with expensive homes on large lots.[7] Perricone subsequently filed an application to rezone the property to R-1-6 (minimum 6,000-square-foot lots). "Although it at all times intended to build homes on lots larger than 8,000 square feet, Perricone requested R-1-6 zoning to alleviate the necessity . . . for a minor variance when house placement on a cul-de-sac or oddly shaped parcel might lack sufficient room for the setback requirements of R-1-8 zoning."[8] The City Council approved the rezoning application.

In 2008, the Hall Companies determined that development of the subject property with R-1-8 zoning was not feasible because there was no demand for large lot expensive homes in Yuma due to existing inventory and the housing market decline. Consequently, the Hall Companies designed a housing project with moderately priced

---

[6]Doc. 30 at p. 7.

[7]*Id.*

[8]*Id.*

homes on 6,000-square-foot lots for low-to-moderate-income families, and submitted an application to the City of Yuma to rezone the subject property from R-1-8 to R-1-6 (minimum 6,000-square-foot lots). Zoning designations R-1-8 and R-1-6 are both low-density zoning, one gradient apart.[9] The application was reviewed by the City's Department of Community Development and Community Planning Division, which recommended approval of the rezoning application as consistent with the General Plan.[10]

On July 14, 2008, the Planning and Zoning Commission held a public hearing on the Hall Companies' rezoning application. Several homeowners from the Belleza Subdivision objected to the rezoning, claiming that "when purchasing a home in Belleza they expected to be surrounded for two-square miles by large lot expensive homes."[11] The homeowners further claimed that the Hall Companies "catered" to low-to-moderate-income families and that people living in "the Hall neighborhoods" have large households, own numerous vehicles which they park in streets and yards, have no pride of ownership and do not maintain their residences, allow unattended juveniles to roam the streets, and use their single-family homes for multi-family dwellings. After the hearing, the Planning and Zoning Commission voted in favor of approving the rezoning request. The Commissioners "noted that there were many examples in Yuma where

---

[9] *Id.* at p. 9.

[10] Doc. 30 at pp. 8-9.

[11] *Id.* at p. 9.

large lot expensive subdivisions had been built next to moderately priced small lot housing subdivisions without problems."[12]

On September 17, 2008, the City Council held a hearing on the Hall Companies' rezoning application. Surrounding landowners submitted written communications and testified at the hearing, making the same arguments they raised before the Planning and Zoning Commission. Several landowners brought photographs of the Trail Estate Subdivision, a Hall Companies' "affordable housing project" which is approximately 2 ½ miles east of the subject property. At the time of the hearing, approximately 77% of the home purchasers were Hispanic.[13]

At the City Council hearing, a Perricone representative testified that Perricone's R-1-6 zoning was obtained solely for design flexibility and promised that if the City Council denied the Hall Companies' request for R-1-6 zoning, Perricone would seek to rezone its property to R-1-8 to "'protect the character of the neighborhood' by preventing development on lots smaller than 8,000 square feet."[14] The City Council denied the Hall Companies' rezoning application by voting "no" on adoption of Ordinance No. 02008-35.

On February 13, 2009, the Hall Companies filed a complaint against the City, alleging claims under 42 U.S.C. § 1983 for violation of the Equal Protection Clause and Due Process Clause, claims of discriminatory intent and disparate impact under the Federal Fair Housing Act, and a state law claims under Article 2, Section 4, of the

---

[12]*Id.* at p. 10.

[13]Doc. 30 at p. 11.

[14]*Id.* at p. 13.

Arizona Constitution and Title 9, Chapter 4, Article 6, of the Arizona Revised States for "unreasonable action without relation to general welfare."[15] The City moved to dismiss the Hall Companies' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

By order dated July 6, 2009, this court granted the City's motion to dismiss the Hall Companies' federal claims, concluding that the complaint failed to state claims for violation of the Hall Companies' equal protection and substantive due process rights under 42 U.S.C. § 1983 and for violation of their rights under the Federal Fair Housing Act.[16] The court dismissed the Hall Companies' federal claims without prejudice and declined to exercise jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(c)(3). The Clerk of Court entered judgment.[17] By order dated September 28, 2009, the court granted the Hall Companies' motion to set aside the judgment, allowing the Hall Companies to file an amended complaint.[18]

On September 28, 2009, the Hall Companies filed an amended complaint against the City of Yuma, alleging violations of their equal protection and substantive due process rights under 42 U.S.C. § 1983, claims of discriminatory intent and disparate impact under the Federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and violations of Article 2, Section 4, of the Arizona Constitution and the Arizona zoning statute, A.R.S. 9-462.01.[19] The City again moved to dismiss the Hall Companies' amended complaint

---

[15]Doc. 1 at p. 20.

[16]Doc. 19.

[17]Doc. 20.

[18]Doc. 29.

[19]Doc. 30.

for failure to state any claim upon which relief may be granted. By order dated February 5, 2010, the court granted the City's motion as to the Hall Companies' equal protection claim under 42 U.S.C. § 1983, disparate treatment claim under the Federal Fair Housing Act, claim under A.R.S. § 9-462.01(F), and federal and state substantive due process claims, and denied the City's motion as to the Hall Companies' disparate impact claim under the Federal Fair Housing Act.[20]

### III. DISCUSSION

The Hall Companies now ask the court to issue an order entering final judgment pursuant to Federal Rule of Civil Procedure 54(b) on their dismissed claims, and finding that there is no just cause to delay the appeal of those claims. Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."

In applying Rule 54(b), "[a] district court must first determine that it has rendered a 'final judgment,' that is, a judgment that is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'"[21] "Then it must determine whether there is any just reason for delay."[22] In deciding whether there is any just reason to delay the appeal of individual final judgments, the court "must take into

---

[20]Doc. 44.

[21]*Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (quoting *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 7 (1980)).

[22]*Id.*

account judicial administrative interests as well as the equities involved."[23] Consideration of judicial administrative interests is necessary to assure that application of Rule 54(b) "preserves the historic federal policy against piecemeal appeals."[24]

In an order dated February 5, 2010, the court granted the City's motion to dismiss the Hall Companies' equal protection claim under 42 U.S.C. § 1983, disparate treatment claim under the Federal Fair Housing Act, claim under A.R.S. § 9-462.01(F), and federal and state substantive due process claims, and denied the City's motion to dismiss the Hall Companies' disparate impact claim under the Federal Fair Housing Act.[25] The court did not enter a final judgment as to the dismissed claims.

Assuming the court had rendered a final judgment on the dismissed claims, there are just reasons for delay. Factors considered in determining whether there is any just reason for delay include "whether the adjudicated claims were separable from the others and whether the nature of the claim was such that no appellate court would have to decide the same issues more than once."[26] Here, the dismissed claims are not separable from the disparate impact claim remaining to be adjudicated. To the contrary, the factual bases for all of the claims alleged in the Hall Companies' First Amended Complaint are identical. All of the claims are based on the allegation that the City's denial of the Hall Companies' rezoning application constituted discrimination based on the Hall Companies' association with Hispanics.

---

[23]*Curtiss-Wright*, 466 U.S. at 8.

[24]*Id.*

[25]Doc. 44.

[26]*Wood*, 422 F.3d at 878 n.2.

-8-

Like *Wood*, the action at bar is not a complex case, nor one where the only remaining claim is a counterclaim. The factual issues overlap entirely, and the only legal right asserted is the right not to be discriminated against on account of race or association with a protected race.[27] These factors all weigh heavily against entry of final judgment under Rule 54(b). In addition, the Hall Companies have failed to set forth a "seriously important reason" for hearing the appeal of the dismissed claims now rather than at the end of trial on the one remaining claim.[28] Because the interests of sound judicial administration would not be served by granting the Hall Companies' Rule 54(b) request for entry of judgment on their dismissed claims, the request will be denied.

In the alternative, the Hall Companies ask the court to certify its February 5, 2010 order for immediate appeal under 28 U.S.C. § 1292(b), which provides in pertinent part,

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order . . . . *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

Section 1292(b) addresses the situation where a party wishes to appeal an interlocutory order, such as an order pertaining to discovery, denying summary judgment, denying a motion to remand, or decertifying a class. Such interlocutory orders are normally not immediately appealable.[29] "In rare circumstances, the district

---

[27] *Wood*, 422 F.3d at 882.

[28] *Id.*

[29] *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 (9th Cir. 2002).

court may approve an immediate appeal of such an order by certifying that the order 'involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'"[30]  Because § 1292(b) is a "departure from the normal rule that only final judgments are appealable," it must be construed narrowly.[31]

The Hall Companies seek certification under § 1292(b) in order to "appeal the issue whether the allegations in the first amended complaint state a plausible claim of intentional discrimination under equal protection and the Fair Housing Act under *Twombly* and *Iqbal*."[32]  The Hall Companies assert that the specific legal question to be presented to the Ninth Circuit is "whether a district court, when presented with factual allegations giving rise to the inference of discriminatory purpose as well as those giving rise to an inference of legal purpose, is allowed to weigh which inference should be given more credit."[33]  In support, the Hall Companies argue,

> . . . In its February 5, 2010 order, this Court found that the facts pleaded by plaintiffs in their complaint were consistent with their claim that their rezoning request was denied by the City due to plaintiffs' association with Hispanics.  The Court went on to conclude, however, that the claim was not plausible under *Iqbal* because "given other factual allegations and more likely explanations, [the allegations] do not establish discriminatory purpose."[34]

---

[30]*Id.* (quoting 28 U.S.C. § 1292(b)).

[31]*Id.*

[32]Doc. 45 at p. 7 (citing *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)).

[33]Doc. 47 at p. 2.

[34]*Id.*

The Hall Companies have misconstrued the court's order. In discussing the Hall Companies' claim of intentional discrimination under the Equal Protection Clause, the court's February 5, 2010 order indicated that the amended complaint alleged that 1) the City Council approved Perricone's request to rezone its property to R-1-6 zoning, and 2) "[t]here is no meaningful difference - other than the race or ethnicity of the purchasers associated with the Hall Companies and Perricone - between the Subject Property and the Perricone Property which the City had rezoned for 6,000 square foot lots." Citing *Iqbal*, the court noted that taken as true, these two allegations are consistent with the Hall Companies' assertion that their rezoning request was denied due to their association with Hispanics.[35]

Again, relying on *Iqbal*, the court treated as conclusory the allegation that "there is no meaningful difference" other than the race of the potential purchasers, and went on to consider the specific factual allegations in the amended complaint to determine if they plausibly suggest an entitlement to relief. The court concluded that the specific factual allegations in the amended complaint, accepted as true, are "more compatible on their face with lawful conduct" than with intentional discrimination.[36] Accordingly, in reliance on *Twombly*, *Iqbal*, and *Al-Kidd*, the court found that the amended complaint failed "to aver enough facts to state an equal protection claim that is plausible on its face."[37]

---

[35]Doc. 44 at p. 12 (citing *Iqbal*, 129 S. Ct. at 1951).

[36]Doc. 44 at p. 13 (quoting *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009)).

[37]*Id.*

Contrary to the Hall Companies' assertion, the court was not "presented with factual allegations giving rise to the inference of discriminatory purpose as well as those giving rise to an inference of legal purpose" and did not "weigh which inference should be given more credit."  Because the Hall Companies seek certification under § 1292(b) to appeal a legal question which is not present in this case, the court declines to certify its February 5, 2010 order for an interlocutory appeal.

## IV.  CONCLUSION

For the reasons set out above, plaintiffs' motion at docket 45 for entry of final judgment pursuant to Rule 54(b), or alternatively, to certify appeal under 28 U.S.C. § 1292(b) is **DENIED**.

DATED this10th day of May 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE