# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

AVENUE 6E INVESTMENTS, LLC, *et al.*,

    Plaintiffs,

vs.

CITY OF YUMA, ARIZONA,
a municipal corporation,

    Defendant.

2:09-cv-00297 JWS

ORDER AND OPINION

[Re: Motion at Docket 238]

## I. MOTION PRESENTED

At docket 238, the City of Yuma, Arizona, ("the City") filed a motion for leave to file an amended answer to the Second Amended Complaint. The City seeks to include a defense not specifically included in its prior answers; namely that Plaintiffs cannot prove their case based on the application of Arizona's "supermajority" municipal voting requirement, A.R.S. § 9-462.04(H) ("Supermajority Rule"). It asserts that while the defense "is not a traditional affirmative defense," and therefore does not have to be included in its answer, it nonetheless "seeks leave to amend its answer out of abundance of caution and in the interest of completeness."[1] Plaintiffs Avenue 6E Investments, LLC and Saguaro Desert Land, Inc. ("Plaintiffs") filed a response in opposition at docket 241 based on the City's lack of diligence, prejudice to their case, and futility of the amendment itself. The City replied at docket 244. Plaintiffs then

---

[1]Doc. 238 at ¶ 5.

-1-

sought permission to file a sur-reply to clarify what the Second Amended Complaint adds to the litigation. The court allowed the sur-reply, which was then filed at docket 247. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This action arises from the City's denial of Plaintiffs' rezoning application for a 42-acre parcel of undeveloped land in Yuma, Arizona ("the Property"). The facts of the case need not be set forth in detail here. Suffice it to say that on remand from the Ninth Circuit, the parties filed a status report and stipulated that Plaintiffs' proposed Second Amended Complaint at docket 76-1 should be the operative complaint moving forward.[2] The City agreed to answer that complaint no later than December 21, 2016, and did so on that date. All additional fact discovery was to be completed by June 1, 2017. Expert discovery was to be completed by July 14, 2017. On June 17, 2017, the City provided a supplemental rebuttal expert report from its expert, Grady Gammage, Jr.[3] That report supplemented Gammage's original rebuttal expert report from July of 2012. The supplemental report raised the issue of Arizona's Supermajority Rule. On July 21, 2017, the City filed this motion for leave to amend its answer, seeking to include a defense based on the Supermajority Rule.

## III. DISCUSSION

Arizona's Supermajority Rule requires three-fourths of the members of a municipality's governing body to vote in favor of a zoning change and is triggered by written protests submitted by a certain percentage of neighboring lot owners. Specifically, the rule provides, in pertinent part:

> If the owners of twenty percent or more of the property by area and number of lots, tracts and condominium units within the zoning area of the affected property file a protest in writing against a proposed amendment, the change shall not become effective except by the favorable vote of three-fourths of all

---

[2]Docs. 211, 214.

[3]Doc. 244-1.

> members of the governing body of the municipality. . . . For the purposes of this subsection, the vote shall be rounded to the nearest whole number.[4]

The City asserts that Plaintiffs cannot prevail on their discrimination claims because the neighbors' protests against the proposed rezoning of the Property triggered the application of the Supermajority Rule. Consequently, for the seven-member Yuma City Council, a vote of six council members would have been required to actually pass the rezoning. According to the City, it believes the record shows that two council members provided non-discriminatory reasons for voting "no" on the proposed rezoning. Therefore, the City posits, Plaintiffs cannot prove "that [it] failed to obtain [six] votes for reasons that violate the FHA."[5]

The City argues that the court should grant it leave to amend under Rule 15 of the Federal Rules of Civil Procedure because Rule 15 is applied liberally and leave to amend should be freely granted when justice requires it. Indeed, Rule 15 provides for a liberal amendment policy, providing that courts grant leave to amend unless the proposed amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay.[6] However, the court agrees with Plaintiffs that the City's request to amend is properly analyzed first under Rule 16 as a motion to amend the scheduling order.[7] Motions to amend were originally due in this case by November 1, 2010. According to the scheduling order, after the deadline, pleadings

---

[4]A.R.S. § 9-462.04(H).

[5]Doc. 238 at ¶ 3. The proposed amended answer says five votes (Doc. 238-1 at ¶ 71), but the City's briefing states 6 votes (Doc. 238 at ¶ 3). Six votes would be required for a seven-member council. *See Hyland v. City of Mesa*, 537 P.2d 936, 937 (Ariz. 1975) (en banc).

[6]*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir.1992).

[7]*Johnson,* 975 F.2d at 607-08 (9th Cir.1992) ("Once the district court has filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standard controlled.").

-3-

could only be amended upon leave of the court and for good cause.[8] A revised discovery schedule was later adopted by the court at the parties' request but that schedule did not set any extended date for filing motions to amend.[9] Following appeal and remand from the Ninth Circuit in 2016, the court asked the parties to file a joint status report outlining what needed to be done to conclude the litigation. In response, the parties stipulated to a new operative complaint, the proposed Second Amended Complaint that had been filed at docket 76-1, and agreed that the City had until December 21, 2016, to answer.[10] It did not include any deadlines for amending those pleadings. Therefore, the time for amendment has passed, and Rule 16 is applicable. Under Rule 16, the schedule may be modified for good cause and with the judge's consent.[11] "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."[12] After good cause to modify has been shown, the moving party then must demonstrate that the amendment is proper under Rule 15.[13]

    The City has not shown adequate good cause to allow an amendment to its answer. The request is not based on a change in the law or on any newly discovered evidence. Indeed, the written protests that it relies upon to support its supermajority defense were in its possession at the start of this litigation.[14] It did not raise the

---

[8] Doc. 58.

[9] Docs. 139-140.

[10] Docs. 211, 212, 214, 217.

[11] Fed. R. Civ. P. 16(b)(4).

[12] *Johnson,* 975 F.2d at 609.

[13] *Id.* at 608.

[14] Doc. 241-1 at ¶3. *See Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 280 (E.D. Pa. 2010) (concluding that where a party "knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent.").

application of A.R.S. § 9-462.04(H) in any discovery responses.[15] Its expert, Gammage, did not mention the rule in his first expert report served by the City in 2012, although Gammage was aware of the existence of the rule at that time.[16] After appeal and remand, on December 21, 2017, the City answered the Plaintiffs' Second Amended Complaint with no mention of A.R.S. § 9-262.04(H).[17] Instead, City waited to seek leave to amend until after fact discovery had closed and shortly before the expert discovery was due.

The City argues that it has been adequately diligent in raising the proposed defense given "the continuing evolution of issues in this case."[18] It points to the fact that after the appeal and remand, the parties agreed to make the Second Amended Complaint, which has an additional § 1983 claim, the operative complaint. Plaintiffs had originally sought to file the Second Amended Complaint in 2010.[19] Their proposed amendment sought to add a §1983 claim for failure to affirmatively further fair housing and to add an allegation that their rezoning application had been the City's only rezoning denial since 2005. The Court did not allow the amendment; it concluded that the proposed claim for failure to further fair housing was not a basis for a private § 1983 suit and concluded that the additional allegation would not change the court's analysis as to Plaintiffs' intentional discrimination claim, which had already been dismissed.[20] After the appeal and remand, however, the intentional discrimination claim is a plausible and alive claim. The Plaintiffs represent that the Second Amended Complaint

---

[15]Doc. 241-2; doc. 241-3.

[16]Doc. 241-4 at pp. 12-13, 14 (Gammage deposition at pp. 46-47, 51).

[17]Doc. 216.

[18]Doc. 244 at p. 3.

[19]Docs. 63, 76, 78.

[20]Docs. 77, 79.

became the operative complaint so as to allow the additional fact to be alleged that supports their intentional discrimination claim—a fact that was raised in 2010 but never included in the complaint because of the court's initial dismissal of Plaintiffs' intentional discrimination claim. Plaintiffs make clear that they do not seek to pursue any of the dismissed claims that they did not challenge on appeal, including the § 1983 claim for failure to affirmatively further fair housing.[21] Therefore, the court cannot say that the issues in this case are still being framed. Indeed, the time for any supplemental discovery to address the claims remanded back to this court for consideration had already passed by the time the City filed its motion for leave to amend.

The City does not provide another reason for the delay except to assert that it need not actually amend the answer to raise its defense. While Rule 8(c) of the Federal Rules of Civil Procedure requires any "avoidance or affirmative defense" to be pled in the answer, the City nonetheless contends that its defense presents a purely legal question about the application of A.R.S. § 9-462.04(H) that is within the parameters of the case already and, regardless of the sufficiency of the answer, the court has the discretion to allow the defense to be raised in future motion practice. Consequently, it believes amendment is proper as a mere formality, to simply clarify what issues are at play in this litigation.

To determine whether a defense has been sufficiently invoked through the defendant's general denials and the parameters of the case or whether it should have been included as an affirmative defense, courts look to fulfill the purpose behind Rule 8(c)—avoiding surprise and prejudice.[22] "[T]he proper focus of the inquiry" is whether failure to specifically plead the defense in the answer "deprived [the plaintiff] of an opportunity to rebut that defense or to alter her litigation strategy accordingly."[23] In

---

[21]Doc. 247.

[22]*In re Gayle Sterten*, 546 F.3d 278, 285 (3d Cir. 2008).

[23]*Id.*

other words, a court considers whether the answer gives "fair notice of the defense."[24] Even if a court concludes that the answer itself did not give the plaintiff proper notice, the defense may still be asserted in subsequent motions at the district court's discretion as long as doing so will not prejudice the plaintiff.[25]

The City's general denials of Plaintiffs' claims are not enough to provide notice as to its defense—that the Supermajority Rule was applicable to the rezoning and therefore makes Plaintiffs' discrimination claims impossible to prove. The City's answer admits that it held its public hearing on the matter in September of 2008 "and that several members of the public wrote letters to the City and/or appeared at the hearing and objected to the application."[26] It did not qualify its answer by mentioning that there were enough written protests to trigger the Supermajority Rule. Also, the City set forth its proposed legitimate reasons for denying Plaintiffs' rezoning request, and neither the statute itself nor written protests from the neighbors was listed.[27]

The City argues that the Plaintiffs should be presumed to know about the rule and its application in contested zoning decisions. However, the Supermajority Rule is not automatically applicable to every zoning decision; there has to be some indication that the correct percentage of neighbors objected to the rezoning, that those neighbors own lots that fall within the confines of the statute, and that they submitted written protests. Thus, the rule's application does indeed depend on facts and is not automatically implicated in any case involving a contested rezoning. Moreover, the City's defense is not simply that the rule applied to require six votes for rezoning; it is

---

[24] *Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1023 (9th Cir. 2010).

[25] *Id.* (noting that the district court discretion to allow a defendant to plead an affirmative defense in a subsequent motion as long if doing so does not prejudice the plaintiff); *see also Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (noting that the Ninth Circuit has "liberalized the requirement that affirmative defenses be raised in a defendant's initial pleading").

[26] Doc. 76-1 at ¶ 32; Doc. 216 at ¶ 32.

[27] Doc. 216 at ¶ 70.

more specific than that. The City contends that, given the application of the rule and the need for six out of seven votes in favor of rezoning, Plaintiffs cannot prove their case because two members of the council gave legitimate reasons for their denials and thus Plaintiffs can, at most, only show that the five members who did not provide a reason for their "no" votes in fact had discriminatory reasons for denying Plaintiffs' rezoning request. The answer provides no notice to Plaintiffs about this specific argument.

The City argues that, regardless of the sufficiency of its answer in giving notice to Plaintiffs, the court should exercise its discretion to allow it to proceed with the defense because doing so will not prejudice the Plaintiffs. They argue that A.R.S. §9-462.04(H) "was raised early and at different points in this litigation" and therefore is "by no means new or surprising to Plaintiffs."[28] In support, the City cites its motion for summary judgment at docket 148 filed in November of 2012. In that motion, the City argued that neighborhood opposition is a legitimate, non-discriminatory reason for denying a rezoning request, citing § 9-462.04(H).[29] The reference was in support of the City's assertion that neighborhood opposition can be a sufficient reason to deny a rezoning. Its mentioning of the statute, simply for the proposition that neighborhood opposition is a legitimate reason for denial, is not enough to put Plaintiffs on notice of the City's specific defense that it is now trying to raise. That is, the City did not argue in its motion that the Supermajority Rule was actually triggered in this case and therefore Plaintiffs cannot show that they failed to get the necessary six votes because of discriminatory reasons. Moreover, none of the public records related to the rezoning request and provided to Plaintiffs in discovery indicate that the Supermajority Rule applied.[30]

---

[28]Doc. 244 at p. 2.

[29]Doc. 148 at p. 16.

[30]Doc. 241-4 at pp. 8-12 (Gammage deposition at pp. 42-46).

The City also argues that Plaintiffs will not be prejudiced because the application of the Supermajority Rule to this case "is of purely legal effect."[31] The court disagrees with the City's assessment. According to the City's expert himself, there are variations as to how Arizona cities interpret the application of the rule. For example, there can be differences as to how an "owner" is defined, what is required to actually qualify as a written protest, and whether there is a deadline by which any such protest must be filed.[32] He was not aware of how the City actually interprets and applies the statute.[33] According to the expert, many jurisdictions will analyze the written protests and do a calculation and verification to see if the rule has been triggered.[34] He admitted that there was no indication in the record that the City actually made an assessment as to whether the rule applied to Plaintiffs' rezoning request.[35] Plaintiffs would need to retain their own expert on the application of this rule and would need to conduct discovery related to the City's interpretation of the rule and how it has implemented the rule in the past. Such evidence is relevant to whether the Supermajority Rule was in fact applicable to the rezoning of the Property. By the time the City raised the issue of the Supermajority Rule and its application to the Property, fact discovery had already closed and expert discovery was almost closed. By the time it requested leave to include the defense, all discovery had closed. Therefore, allowing the defense to be added now would deprive Plaintiffs of the opportunity to rebut the defense.

---

[31]Doc. 244 at p. 4.

[32]Doc. 241-4 at pp. 15-19 (Gammage deposition at pp. 55-59).

[33]Doc. 241-4 at pp. 21-22 (Gammage deposition at pp. 93-94).

[34]Doc. 241-4 at p. 20 (Gammage deposition at p. 62).

[35]Doc. 241-4 at pp. 8-12 (Gammage deposition at pp. 42-46).

## IV. CONCLUSION

For the foregoing reasons, the City's motion at docket 238 for leave to file an amended answer to the Second Amended Complaint is DENIED.

DATED this 28th day of October 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT