# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Avenue 6E Investments, *et. al.*, ) | 2:09-cv-00297 JWS |
| ) | |
| Plaintiffs, ) | ORDER AND OPINION |
| ) | |
| vs. ) | [Motion at Docket 260] |
| ) | |
| City of Yuma, ) | |
| ) | |
| Defendant. ) | |

## I. MOTION PRESENTED

At docket 260, Defendant City of Yuma filed a motion to try this case in the Yuma courthouse of the Phoenix division pursuant to 28 U.S.C. § 1404(c) and Arizona Local Civil Rule 77.1; Plaintiffs Avenue 6E Investments, LLC and Saguaro Desert Land filed their response at docket 272; and Defendant replied at docket 274. Oral argument was requested, but would not be of assistance to the court.

## II. BACKGROUND

Plaintiffs Avenue 6E Investments, LLC and Saguaro Desert Land, Inc. are housing developers in Yuma owned by members of the Hall family. In 2006, Avenue 6E purchased 42 acres of undeveloped land in southeastern Yuma (the "Property") from

another housing developer, KDC of Yuma, LLC ("KDC"). Avenue 6E granted Saguaro an option to purchase the Property to develop a "moderately priced" housing project.

The City of Yuma's General Plan designates the Property for use as "Low Density Residential." Allowing two permissible zoning designations: "R-1-6" zoning (residential housing subdivision on 6,000 square foot lots) and "R-1-8" zoning (residential housing subdivision on at least 8,000 square foot lots). The Property was designated R-1-8 at the time Avenue 6E purchased it. The Property is bordered on the south by the 38-acre "Belleza Subdivision" (minimum 9,000 square foot lots); on the north by the "Country Roads" recreational village (2,500 square foot lots limited to persons age 55 and over); on the west by the 80-acre "Terra Bella Subdivision" owned by Perricone Development Group II ("Perricone"), a developer of luxury homes; and to the east by a parcel the City of Yuma anticipates using for a wastewater facility and a municipal park.

In 2008, the housing market collapsed. Plaintiffs determined that there was a diminished need for 8,000 square foot lots. Plaintiffs saw a need for a higher-density, moderately priced housing project with 6,000 square foot lots consistent with the City of Yuma's General Plan. Thus, Plaintiffs applied to rezone the Property from R-1-8 to R-1-6.

The City of Yuma's staff and in-house planning experts both recommended approval of the zoning request. The City of Yuma Planning and Zoning Commission held a public hearing on the zoning application. Several homeowners from the Belleza

Subdivision wrote letters or spoke at the hearing objecting to rezoning. The Commission voted unanimously to approve the rezoning request.

The Yuma City Council took up the zoning request with recommendations to grant the request from the Planning Staff and the Planning and Zoning Commission. The Yuma City Council received complaints from landowners near the Property. Plaintiffs proposed creating a "buffer" zone of 8,000 square foot lots separating the Property from the Belleza and Terra Bella subdivisions, with 6,000 square foot lots placed between the buffer zone and the Country Roads RV park.

The Yuma City Council denied the rezoning request. The rezoning request was the only one of 76 applications over the preceding three years to be considered and rejected by the Yuma City Council.

### III. STANDARD OF REVIEW

Under both 28 U.S.C. § 1404(c) and Arizona Local Civil Rule 77.1, the District court has broad discretion in selecting the forum for trial. 28 U.S.C. § 1404(c) explicitly affords discretion. "A district court may order any civil action to be tried at any place within the division in which it is pending." 28 U.S.C. § 1404(c).

Arizona Local Civil Rule 77.1 affords the same discretion. "Like Nevada and Alaska, Arizona does not have official, statutory divisions within the District of Arizona."[1] Instead, the District of Arizona is divided into three divisions: Phoenix, Prescott, and Tucson.[2] The Phoenix division covers Maricopa, Pinal, Yuma, La Paz, and Gila

---

[1] *United States v. $93,110.00 in U.S. Currency*, No. CV-08-1499-PHX-LOA, 2008 WL 4183074, at *3 (D. Ariz. Sept. 8, 2008) (internal citation omitted).
[2] Arizona Local Civil Rule 77.1(a)

-3-

counties.³ "Unless otherwise ordered by the Court, all civil and criminal cases founded on causes of action arising in the Phoenix division shall be tried in Phoenix."⁴ The language is permissive, giving the District court the discretion to hold trial in a place other than Phoenix.

The Plaintiff's choice of forum is given presumptive deference unless Defendant can demonstrate inconvenience.⁵ "The party seeking a change of venue bears the burden of establishing that a transfer of the case is proper."⁶ Transferring venue for forum non conveniens is "an exceptional tool to be applied sparingly."⁷ A District court may consider any of the following factors in determining whether to transfer venue:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.⁸

It has also been explained that, "The convenience of witnesses is said to be the most important factor in passing on a transfer motion."⁹ The District court evaluates the number of witnesses and "the nature and quality of witness testimony."¹⁰ The parties

---

³ *Id.*
⁴ *Id.* at (c)(1).
⁵ *Damon P. Humphries v. Allstate Ins. Co.*, No. CV-17-01606-PHX-JJT, 2018 WL 1510441, at *5 (D. Ariz. Mar. 27, 2018).
⁶ *R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, No. CV-12-08261-PCT-JAT, 2017 WL 4409463, at *3 (D. Ariz. Oct. 4, 2017) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).
⁷ *High Purity D.R.A.W., Inc. v. Sanveo, Inc.*, No. 2:17-CV-1784-HRH, 2017 WL 4652203, at *9 (D. Ariz. Oct. 17, 2017) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000)).
⁸ *Id.*
⁹ *Judd v. KeyPoint Gov't Sols., Inc.*, No. CV-17-08050-PHX-SPL, 2018 WL 803348, at *3 (D. Ariz. Feb. 9, 2018) (internal citation omitted).
¹⁰ *Id.* (internal citation omitted).

generally "must identify relevant witnesses, state their location and describe their testimony and its relevance."[11]

### IV. DISCUSSION

**A. The factors a court may consider in granting a change of venue overwhelmingly support a change of venue from Phoenix to Yuma for trial**

The factors a court may consider in determining whether to transfer venue overwhelmingly indicate that a change of venue is warranted.

First, "the location where the relevant agreements were negotiated and executed." This case involves a housing development in Yuma. The Plaintiff is a Yuma corporation. The Defendant is the City of Yuma. Every portion of this litigation is related to and took place within the city and county of Yuma.

Second, "the state that is most familiar with the governing law" is not relevant because both Phoenix and Yuma are in Arizona and the case is governed by Arizona law.

Third, "the plaintiff's choice of forum." The Plaintiff filed this case within the Phoenix Division of the District of Arizona. The request here is not to move the case from one District to another District or even from one Division to another Division. The request in this case is to move the case from one courthouse within the same Division to a different courthouse in the same Division. Plaintiffs prefer trial in Phoenix. The preference is noted, but taking into account the other factors

---

[11] *Id.* (internal citation omitted).

and the that the request for a change in venue will not change the court, District, or Division that is involved in trial the preference is given less weight than would ordinarily be the case.

Fourth, "the respective parties' contacts with the forum." Plaintiffs are Yuma businesses. The City of Yuma is both the Defendant and the place where the courthouse is located. The contact with the forum is robust for both parties.

Fifth, "the contacts relating to the plaintiff's cause of action in the chosen forum." All portions of this case are related to conduct and decisions made entirely within the City of Yuma.

Sixth, both "the differences in the costs of litigation in the two forums" and "the availability of compulsory process to compel attendance of unwilling non-party witnesses" are irrelevant to this motion. The request is a change in courthouses from Phoenix to Yuma. The change will not have a significant impact on the cost of litigation or the availability of compulsory process.

Finally, "the ease of access to sources of proof" is the strongest factor in granting a change from Phoenix to Yuma for trial. Among the many factors, "The convenience of witnesses is said to be the most important factor in passing on a transfer motion."[12] This case involves a housing development in Yuma. The Plaintiffs are Yuma businesses. The Defendant is the City of Yuma. Yuma

---

[12] *Judd v. KeyPoint Gov't Sols., Inc.*, No. CV-17-08050-PHX-SPL, 2018 WL 803348, at *3 (D. Ariz. Feb. 9, 2018) (internal citation omitted).

appears to be the most convenient forum for the majority of witnesses.[13] Twenty-two of 41 witnesses on Plaintiff's witness list are County of Yuma employees. The three members of the Hill family reside in the County of Yuma. Thus, 25 of 41 witnesses on Plaintiff's witness list are residents of Yuma County. Only one of Plaintiff's three expert witnesses resides in Phoenix (and that residence is only seasonal). Defendant's witness list does not indicate which witnesses are County of Yuma employees. But, comparing Plaintiff's witness list with Defendant's witness list illustrates that 13 County of Yuma employees appear on both lists. Defendant also lists the three Hills. Thus, at least 16 of the 24 witnesses are Yuma residents. Based on the pleadings, six of Defendant's remaining eight are experts. Three of the six expert witnesses live in Yuma. It is clear based on the briefing and both parties' witness lists, that the vast majority of the witnesses are residents of Yuma County.

**B. The Plaintiffs' argument that a jury pool for a case in Yuma is tainted by prejudice and is inconsistent with the court's jury selection plan.**

Plaintiffs raise concern that there is a general prejudice against Plaintiffs within the City of Yuma. Plaintiffs' contention is that the general prejudice among some potential Yuma jurors could impact the trial process.

---

[13] Neither Plaintiff nor Defendant provided specific information about witnesses in briefing on this Motion, but examining both parties witness lists illuminates the residence of the witnesses to a sufficient degree to rule on the Motion.

-7-

There is no impact to General Order 09-17's written jury selection plan under 28 U.S.C. § 1863. Trial will still occur in the Phoenix division and is still subject to General Order 09-17. The only change is from the Phoenix courthouse to the Yuma courthouse. Regardless of trial location, the jury selection plan will summon the prospective jurors from the same locations.

It is important to note that, "Jury pool members are presumed to be impartial."[14] A party claiming that a jury may be partial carries a heavy burden. The party "must show saturating and inflammatory press coverage that would reach virtually all members of the jury pool and lead a court to conclude that the pool as a whole has been adversely influenced."[15] Two factors are particularly relevant when a party argues that a jury pool is prejudiced. First, "[t]he presumed prejudice principle is rarely applicable and is reserved for 'an extreme situation.'"[16] Second, "courts are reluctant to presume prejudice too early in a case. As a general rule, 'the effect of pretrial publicity can 'be better determined after the voir dire examination of the jurors.'"[17] In this case, Plaintiffs do not present evidence indicating prejudice beyond the complaints raised by certain residents at the various stages of the process that ultimately resulted in the City of Yuma's decision to deny the rezoning request. The evidence is insufficient to

---

[14] *Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 882 (D. Ariz. 2008) (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)).
[15] *Id.*
[16] *Id.* (internal citation omitted); see also *L.A. Mem'l Coliseum Comm'n v. NFL*, 726 F.2d 1381, 1400 (9th Cir. 1984) (court should presume prejudice only where the community has been " 'utterly corrupted by press coverage'") (internal citation omitted).
[17] *Id.* (citing *Narten v. Eyman*, 460 F.2d 184, 187 (9th Cir. 1969).

prove the high level of presumed prejudice necessary to determine that a jury pool would be so tainted that trial cannot occur in a Yuma courthouse. Furthermore, this case is not yet set for trial and is far removed from the voir dire process where a determination of prejudice may be more accurately assessed. For these reasons, this argument is rejected at this time.

### V. CONCLUSION

For the reasons stated above, Defendant's motion at docket 260 to change venue to Yuma for trial is GRANTED.

DATED this 19th day of April 2018.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT