UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Avenue 6 E Investments, *et. al.*, | ) | 2:09-cv-000297 JWS |
| Plaintiffs, | ) | ORDER AND OPINION |
| vs. | ) | [Motion at Docket 266] |
| City of Yuma, | ) | |
| Defendant. | ) | |

## I.  MOTION PRESENTED

At docket 266, defendant City of Yuma ("the City") filed a motion *in limine* seeking the exclusion of certain evidence.  Plaintiffs Avenue 6E Investments, LLC and Saguaro Desert Land ("Plaintiffs") filed their response at docket 278.  No reply was filed.

## II.  BACKGROUND

The background to this case is well known to the parties.  In a nutshell, the dispute turns on whether the City Council's decision to deny Plaintiffs' re-zoning request was animated by ethnic discrimination against Hispanics.  More details are revealed in the following sections of this order.  A fuller statement of the general background will be found in *Avenue 6 E Investments, LLC v. City of Yuma, Arizona.*[1]

---

[1] 818 F.3d 493 (9th Cir. 2016), *cert. denied,* 137 S. Ct. 295 (2016).

## III. DISCUSSION

The City asks the court to exclude evidence of (1) statements made in opposition to Plaintiffs' re-zoning request unless the statements were made in front of the City Council or memorialized in documents made available to the City Council; (2) testimony characterizing such statements; (3) any negative inference which might be drawn from a City Council members' refusal to testify based on legislative privilege; and (4) testimony by Deirdre Pfeiffer, Ph.D. ("Pfeiffer") to the effect that the City departed from applicable planning standards.

### A.     Statements opposing the re-zoning request not made known to the City Council are not irrelevant.

Defendant first seeks to preclude testimony showing that Yuma residents made statements opposing the re-zoning request absent evidence demonstrating that the City Council had knowledge of the statements.  The City contends that such evidence is irrelevant, because the pivotal issue is whether the City Council members denied the re-zoning request because of the ethnic prejudice of their constituents.  The City relies on what in the context of this litigation is too narrow a reading of Fed. R. Evid. 401, and on *Mhany Mgmt., Inc. v. Cty. of Nassau.*[2]

Rule 401 defines relevant evidence as any information that has a tendency to make a fact which is of consequence more or less probable than it would be without that information.  Statements which could support the conclusion that there was widespread opposition among constituents to the re-zoning based on ethnic prejudice, even if certain specific statements were not known to City Council members, would support an inference that the Council members acted to mollify their constituents' prejudicial concerns.  At this stage of the litigation, it is not possible for the court to rule that evidence of any particular statement would or would not be admissible.  Such rulings will depend on the overall context which emerges at trial.

---

[2] 819 F.3d 581 (2d Cir. 2016).

*Mhany* also concerned a decision denying re-zoning based on comments and concerns raised by constituents.  While it is true that the comments made in that case were known to the decision maker, the *Mhany* court did not hold that each comment presented to demonstrate an individual's animus against a protected group must also be verifiably known to the decision maker.  That issue was not presented to the court. However, the *Mhany* court highlighted the difficulty in proving discriminatory intent. The court concluded that this difficulty requires a more inclusive rather than restrictive evidentiary standard.  "Because discriminatory intent is rarely susceptible to direct proof, a district court facing a question of discriminatory intent must make 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'"[3]

The *Mhany* court relied on the United States Supreme Court's decision in *Village of Arlington Heights v. Metro. Housing Dev. Corp.*,[4] in assessing potential discrimination.  Like the *Mhany* court, the Ninth Circuit relies on *Arlington Heights*. "*Arlington Heights* governs our inquiry whether it is plausible that, in violation of the [Fair Housing Act] and the Equal Protection Clause, an 'invidious discriminatory purpose was a motivating factor' behind the City's decision to deny the zoning application."[5]  The complicated decision making process and the difficulty in proving discrimination calls for analysis of the decision's context:  "The court analyzes whether a discriminatory purpose motivated the defendant by examining the events leading up to the challenged decision and the legislative history behind it, the defendant's departure from normal procedures or substantive conclusions, and the historical background of the decision and whether it creates a disparate impact."[6]

---

[3] *Id.* at 606.

[4] 429 U.S. 252 (1977).

[5] *Ave. 6 E Investments*, 818 F. 3d at 504.

[6] *Id.*

1    The City's request to limit evidence to statements made by constituents which

2    were specifically called to the attention of the City Council will be denied.

3    **B.    Statements opposing the re-zoning request not made known to the City Council should not be excluded under Federal Rule of Evidence 403.**

4    Fed. R. Evid. 403 provides for the exclusion of evidence when its probative value

5    is "substantially outweighed" by "unfair prejudice, confusing the issues, misleading the

6    jury, undue delay" and the like.  The first thing to be considered is the probative value of

7    the statements at issue.

8

9    The City cites *Phoenix v. Coatesville Area Sch. Dist.*,[7]  to support the City's

10   conclusion that, "The statements of Yuma residents that the Council did not hear and

11   were not aware of is, at most, of the very slightest probative value, which means the

12   evidence should be excluded at even a minimal risk of unfair prejudice or confusion."[8]

13   *Phoenix* is easily distinguished from the case at bar.  In *Phoenix* there was direct

14   evidence that the decision maker was motivated by discriminatory animus in terminating

15   the employee.   Here, the absence of direct evidence increases the significance of

16   circumstantial evidence, including the statements the City wants the court to exclude.

17   Moreover, the evidence excluded in *Phoenix* did not deal with the pivotal issues

18   concerning the termination of the employee.  Here, the comments which the City seeks

19   to exclude deal directly with the re-zoning decision.  They have considerably more than

20   the slightest probative value in the context of this litigation.

21   The City also urges exclusion on the basis of the prejudicial nature of the

22   evidence.  The evidence the City would exclude may be considered prejudicial because

23   it reflects ethnic bias.  However, the prejudice relating to the statements is not unfair

24

25

26 _____

27   [7] 683 F. App'x (3d Cir. 2017).

28   [8] Doc. 266 at p. 4.

-4-

prejudice given that the litigation is founded on the premise that the City Council condoned ethnic discrimination.

The court does not find that admitting the statements would confuse the issues or mislead the jury.  Any risk of such may be adequately addressed by an appropriate limiting instruction at trial. Neither does the court find that introduction of the statements would cause undue delay.  In short, the probative value of the statements is not "substantially outweighed" by the matters listed in Rule 403.

## C.    Evidence characterizing others' statements.

The City argues that lay opinion testimony characterizing comments by others or discussing motivation must be excluded under Fed. R. Evid. 602 and 701.  Rule 602 requires personal knowledge, and Rule 701 requires the testimony to be helpful to the fact finder.

### 1. Federal Rule of Evidence 602.

Defendant principally relies on two cases to argue that the inclusion of lay opinion testimony characterizing or discussing the motivation of others is precluded under Fed. R. Evid. 602.[9]  Neither case stands for the proposition cited by the City and neither supports exclusion of potential lay opinion testimony at this time.

The first case, *Coca-Cola Co. v. Overland, Inc.,* dealt with the use of affidavits from employees indicating that they "*believe* that customers ordering 'Coke' are using the term in a generic sense."[10]  Examining the use of affidavits in opposition to a motion for summary judgement, the court concluded that the affidavits must: "be made on

---

[9] The City also cites an unpublished Ninth Circuit opinion in *United States v. Mohamud*, 666 F. App'x 591, 596 (9th Cir. 2016).  Circuit Rule 36-3(a) provides:  "Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."  Furthermore, the opinion does not relate to Fed. R. Evid. 602; instead, the opinion turns on Fed. R. Evid. 401.

[10] 692 F.2d 1250, 1254 (9th Cir. 1982) (emphasis in original).

personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify on the matters stated therein."[11]  The affidavits were disqualified because they failed to meet that  standard.  The motion *in limine* does not deal with affidavits submitted in opposition to a motion for summary judgment.  Moreover, the City does not articulate the manner in which any specific statement that might be offered in this case would fail to meet the standard articulated in *Coca-Cola*.

The City also cites *Bd. Of Trustees of Fire & Police Retiree Health Fund v. Towers, Perrin, Forster & Crosby, Inc.,*[12] a Texas Court of Appeals case.  The testimony in *Bd. Of Trustees* did not deal with a characterization of comments observed or opinion about motivations, it dealt with speculation about what may have occurred if certain facts were different.  The testimony in questions was: "'my opinion, which I believe is well founded, that there is a reasonable certainty that [the union] and the City of San Antonio would have adopted higher contribution rates in the 2002 Firefighters CBA if it had been known that the contribution rates recommended in the 2000 Towers Perrin study were too low.'"[13]  The problem with the testimony was that it was not based on an observation but rather a guess at what may have happened if certain events were different.  It is in this context that the Texas court noted: "'A speculative opinion, such as an opinion on what someone else was thinking at a specific time, does not help the jury to either (1) understand the witness' testimony better, or (2) decide the question of the other person's intent. Mere conjecture does not assist the jury.'"[14]

---

[11] *Id.* at 1255.

[12] 191 S.W.3d 185 (Tex. App. 2005).

[13] *Id.* at 193.

[14] *Id.* at 194 (quoting *Fairow v. State*, 920 S.W.2d 357, 361 (Tex. App. 1996), *aff'd*, 943 S.W.2d 895 (Tex. Crim. App.1997)).

The City does not provide sufficient support for exclusion of potential lay opinion testimony under Fed. R. Evid. 602 prior to trial. At trial the court will have an opportunity to consider the opinions in context. The request to exclude the testimony at this time will be denied.

**2. Federal Rule of Evidence 701.**

Fed. R. Evid. 701 is meant to clearly establish when lay opinion testimony is permissible. "Rule 701 represents 'a movement away from ... courts' historically skeptical view of lay opinion evidence,' and is 'rooted in the modern trend away from fine distinctions between fact and opinion and toward greater admissibility.'"[15] However, such testimony may be excluded if the opinion is not helpful

The City argues that testimony regarding knowledge of motivation is unhelpful under Federal Rules of Evidence Rule 701. To support this argument, Defendant relies on *United States v. Anderskow*[16]. The *Anderskow* court was dealing with convictions for conspiracy and wire fraud. Both crimes require knowledge as an element of the crime. On appeal, Mr. Anderskow argued that testimony from co-conspirator Alevy should have been excluded under Fed. R. Evid. 701(a) and (b). The *Anderskow* court did not reach Mr. Anderskow's argument because it found that "none of the disputed testimony actually contains a 'lay opinion' by Alevy as to Anderskow's knowledge."[17]

The situation was different in the appeal by Anderskow's co-defendant Anchors. With respect to Anchors, the appellate court first found that Alevy's testimony of what he observed to be Anchors' behavior was not excluded by Rule 701(a)'s requirement that the testimony have a rational basis. However, the court found that the testimony

---

[15] *United States v. Stadtmauer*, 620 F.3d 238, 262 (3d Cir. 2010) (quoting *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1195 (3d Cir.1995)).

[16] 88 F.3d 245 (3rd Cir. 1996).

[17] *Id.* at 249.

should have been excluded under Rule 701(b), because having heard Alevy's testimony of what he observed, it was for the jury, not Alvey, to draw an inference about what those observations showed about Anchors' knowledge.

The case at bar presents a different situation. Here, the nature of the constituent statements is such that taken literally, they might not seem to suggest ethnic animus. Thus, testimony that the statements may be treated as "code" for ethnic hostility is crucial to Plaintiff's case. That is not to say that an opinion that the statements necessarily are "code" would be admissible, but testimony about how the statements could operate as "code" likely would be admissible. It would then be up to the jury to draw inferences regarding the true character of the comments. At this stage of the litigation, the court cannot exclude the subject testimony under Fed. R. Evid. 701.

## D.   Negative inference from Yuma City Council members decision not to testify.

Relying on legislative privilege, City Council members may elect not to testify at trial. The parties' briefing discloses that Plaintiffs do not intend to seek a negative inference if a Council member chooses not to testify. It also indicates that the parties will craft a jury instruction which will adequately advise the jury concerning the relevant privilege. The court considers the issue moot.

## E.   Plaintiff may introduce expert testimony regarding planning standards applicable to City Council members.

Defendant contends that the inclusion of evidence that the Yuma City Council violated "two sets of planning standards" in denying the re-zoning request should be excluded, because it is irrelevant and "substantially more prejudicial than probative, and carries a substantial risk of confusing the jury."[18]

---

[18] Doc. 266 at p. 11.

**1. Some of the evidence is relevant.**

As previously noted, the difficulty in proving discriminatory intent requires a permissive evidentiary standard allowing consideration of a decision's context. "The court analyzes whether a discriminatory purpose motivated the defendant by examining the events leading up to the challenged decision and the legislative history behind it, the defendant's departure from normal procedures or substantive conclusions, and the historical background of the decision and whether it creates a disparate impact."[19] "'Substantive departures' are usually indicated when 'factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached.'"[20] Here, examination of factors usually considered by decisionmakers when determining re-zoning decisions is relevant.

The City seeks to exclude Pheiffer's expert testimony regarding the American Planning Association's "Ethical Principles in Planning" ("EPP") and the American Institute of Certified Planners Code ("AICP"). Plaintiffs will not seek to show that the AICP is applicable to the City Council members, but contend that the EPP does apply. By its terms, the EPP provides an ethical guide to all participants in municipal planning issues, including decisionmakers such as the City Council members.[21] The court finds that the EPP addresses factors usually considered by decisionmakers concerning re-zoning decisions and other planning decisions.

The City cites two cases to support its assertion that evidence of the failure to comply with the planning standards is irrelevant: *Stotesbury v. Pirate Duck Adventure,*

---

[19] *Ave. 6 E Investments*, 818 F.3d at 504 (quoting *Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015)).

[20] *Greater New Orleans Fair Hous. Action Ctr. v. St. Bernard Par.*, 641 F. Supp. 2d 563, 574 (E.D. La. 2009) (quoting *Arlington Heights*, 429 U.S. at 267).

[21] Doc. 278 at p. 9 quoting from the EPP.

*LLC*[22] and *Marquez v. City of Albuquerque*.[23] Neither case supports the conclusion that a standard generally applicable to the specific conduct in question is irrelevant.

*Stotesbury* involved a car accident in the US Virgin Islands where one driver was operating a commercial vehicle. The court concluded, "It is undisputed that the Federal Motor Carrier Vehicle Safety Regulations and Commercial Driver's License Standards did not apply to commercial vehicles in the Virgin Islands on the date of the accident."[24] Because the standard was not applicable, it was not relevant. This is distinct from the situation here, where the EPP provides a "guide to ethical conduct" and principles which apply to the City Council members. Here, substantive departures are evidence of potentially discriminatory behavior.

*Marquez* was a section 1983 case involving allegations of excessive force by a police officer. The Tenth Circuit's Fourth Amendment jurisprudence was well established and, unlike the permissive context analysis applicable here, it excluded the use of certain specific standards. The *Marquez* court noted, "the Fourth Amendment 'does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones.'"[25] The court also noted, "'violations of state law and police procedure generally do not give rise to a 1983 claim' for excessive force."[26] Rather than relying on those standards, the Tenth Circuit had a "proper perspective from which to evaluate the conduct of a police officer—that 'of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain

---

[22] No. 3:11-CV-00018, 2013 WL 5508131 (D.V.I. Oct. 2, 2013).

[23] 399 F.3d 1216 (10th Cir. 2005).

[24] *Stotesbury*, 2013 WL 5508131, at *3.

[25] *Marquez*, 399 F.3d at 1222 (citing *United States v. Melendez–Garcia*, 28 F.3d 1046, 1052 (10th Cir.1994)).

[26] *Id.* (quoting *Romero v. Board of County Comm'rs*, 60 F.3d 702, 705 (10th Cir.1995)).

difficult circumstances.'"[27] Thus, those standards explicitly excluded testimony regarding a differing standard as the *ipso facto* standard in evaluating violations of section 1983 and the Fourth Amendment.[28] Here, no jurisprudence expressly forecloses consideration of the EPP.

**2.    Evidence of a substantive departure from the planning standards should not be excluded under Federal Rules of Evidence 403.**

In the context of the case at bar, a departure from applicable planning standards has significant probative value with respect to the proposition that the City Council's re-zoning decision reflects ethnic bias against Hispanics.  Its probative value is not "substantially outweighed" by the danger of unfair prejudice, confusion of the issues, misleading the jury or any other factor enumerated in Fed. R. Evid. 403.

## V.  CONCLUSION

For the reasons set out above, the motion at docket 266 is DENIED.

DATED this 31st day of May 2018.


/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[27] *Id.* (citing *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1313 (10th Cir. 2002)).

[28] *Id.*